UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JASMINE G.,                                              Case No. 1:24-cv-01183-AR

                        Plaintiff,                       OPINION AND ORDER

             v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                        Defendant.

_____

**ARMISTEAD, United States Magistrate Judge**

             In this judicial review of the Commissioner's final decision denying Social Security

benefits, Jasmine G. (last name omitted for privacy) challenges the Administrative Law Judge's

findings regarding her subjective symptom testimony and the medical opinions of Drs. Ruth

Lowengart and Nat Fondell. (Pl.'s Br. at 2-12.) As explained below, the Commissioner's decision is reversed, and this case is remanded for the immediate calculation and payment of benefits.[1]

## PROCEDURAL BACKGROUND

Plaintiff applied for Title XVI Supplemental Security Income (SSI) in September 2021, alleging disability onset as of August 1, 2020. (Tr. 15.) Her application was denied, and plaintiff requested, and was granted, a hearing before an ALJ. (Tr. 40-76.) On November 20, 2023, the ALJ issued a decision finding plaintiff was not disabled. (Tr. 15-32.) Plaintiff requested review, which the Appeals Council denied in May 2024. (Tr. 211, 1-6.) Plaintiff now seeks review of that decision.

## ALJ'S DECISION

In denying plaintiff's application for SSI, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity (SGA) since the September 2021 application date. (Tr. 17.) At step two, the ALJ determined that plaintiff had the following severe impairments: fibromyalgia, chronic fatigue syndrome, postural orthostatic tachycardia syndrome (POTS), cubital tunnel syndrome, obesity, Ehlers-Danlos syndrome, depersonalization/derealization autism, agoraphobia, major depressive disorder, attention-deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD),

---

[1]    This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]    To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id*.; *see also Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

and anxiety. (Tr. 17.) At step three, the ALJ determined that plaintiff's impairments, singly or in combination, did not meet or medically equal the severity of any listed impairment. (Tr. 18.)

As for the ALJ's assessment of plaintiff's residual functional capacity (RFC), 20 C.F.R. § 416.945, the ALJ determined that she had the ability to perform sedentary work with these added limitations:

> Occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extreme heat. The claimant can engage in no commercial driving. The claimant must avoid all hazards such as moving machinery and unprotected heights. The claimant can frequently handle bilaterally. The claimant can perform simple, routine, repetitive tasks with only occasional decision making required. The claimant can tolerate occasional changes in a work setting. The claimant can occasionally interact with the public, coworkers, and supervisors. (Tr. 21.)

At step four, the ALJ determined that plaintiff cannot perform any past relevant work. (Tr. 30.) Considering her RFC, the ALJ found at step five that jobs existed in significant numbers in the national economy that plaintiff could perform, including such representative occupations as eyewear polisher, stuffer, and final assembler. (Tr. 31.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the

evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

A.    ***Subjective Symptom Testimony***

Determining the credibility of a claimant's symptom testimony requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. At the first step, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second step, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 416.929. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for disregarding her subjective symptom testimony. (Pl. Br. at 2-5.) Specifically, plaintiff contends that the ALJ failed to consider her allegations in light of her fibromyalgia and failed to provide reasoning to support his findings. Plaintiff is correct.

1.      **Inconsistent Objective Medical Evidence**

Although an ALJ may use "inconsistent objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Smartt*, 53 F.4th at 498 (emphasis added) (cleaned up); *see Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020) ("An ALJ, however, may not discredit the claimant's subjective complaints solely because the objective evidence fails to fully corroborate the degree of pain alleged."). Thus, to satisfy that standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is inconsistent with the claimant's subjective symptom testimony. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-38, 1040 (9th Cir. 2007).

Here, the ALJ failed to do so by summarizing medical evidence he found undermined plaintiff's claims of impairment and focusing on the evidence supporting his conclusion even when evidence to the contrary appears on the same pages of the treatment notes on which the ALJ relied. An ALJ may not "cherry pick" evidence without considering its context in the record. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (holding ALJ may not "cherry pick" evidence that disfavors disability without considering its context in record); *Garrison*, 759 F.3d at 1017 n.23  (ALJ may not "cherry-pick" from mixed results to support a denial).

For example, the ALJ acknowledged plaintiff's testimony about her fibromyalgia and that she exhibited "18/18 tender-points" consistent with fibromyalgia. (Tr. 23.) To undermine this testimony, the ALJ cited instances where "[plaintiff]'s heart rate and rhythm were regular. [Plaintiff]'s lungs were clear. [She] retained 5/5 strength in all extremities. [Her] reflexes were

2+." (Tr. 23.) But the ALJ did not grapple with the full context of the examination, which also indicated that her "[j]oints are hypermobile. [She has p]oor muscle development [with her] sensation slightly reduced [at her] feet and hands." (Tr. 23, citing Tr. 1023, 1032-44, 1046.) Next, the ALJ cited examinations showing that plaintiff's "extremities retained normal range of motion with no signs of muscle weakness" and that her "motor function was intact with normal coordination" with "normal gait" to undermine her testimony about "chronic fatigue and pain coupled with joint instability." (Tr. 23.) Again, the ALJ failed to acknowledge the full context of those examinations that also show her "[b]alance is functional, but poor" and that her hand muscles show a lack of functionality consistent with carpel tunnel syndrome. (Tr. 23, 29, citing Tr. 491, 737-45, 747, 854, 859.) And though the ALJ is correct that plaintiff would sometimes demonstrate normal coordination and strength, he mischaracterizes her physical abilities when her fibromyalgia is active, causing pain "even [with] the lightest brush on [her] skin[,]" or "fiery pain" and the fatigue that comes with it. (*See* Tr. 53-54.)

The Ninth Circuit has cautioned against relying on physical measures to discount fibromyalgia claims. *See Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("The ALJ erred by effectively requiring objective evidence for a disease that eludes such measurement."). Plaintiff likens her situation to that of the plaintiff in *Jaime I.G. v. Comm'r of Soc. Sec. Admin.*, where the ALJ in that case failed to consider the unique nature of fibromyalgia. No. 3:24-CV-5273-DWC, 2024 WL 5219796 (W.D. Wash. Dec. 26, 2024). There, the court relied on the *Benecke* holding to caution against relying on physical measures to discount fibromyalgia claims, holding that "although the ALJ provided a lengthy overview of the medical evidence in the record, she did not provide any explanation for why the cited normal physical examination

and digital imaging findings conflicted with Plaintiff's claims of debilitating pain." *Id*. at 13. Plaintiff asserts the same is true here, and the court agrees. As stated, the ALJ provided a summary of medical examination findings but failed to explain how such findings conflicted with plaintiff's claims of debilitating pain from fibromyalgia. (*See* Tr. 22-23.) Further, many of the findings the ALJ used to undercut plaintiff's testimony about her fibromyalgia are unrelated to the diagnosis at hand, namely, her "heart rate and rhythm were regular without murmurs, rubs, or gallops[,]" or her "pulses [being] equal bilaterally[,]" or that her "breath sounds were equal and clear to auscultation without wheezes, rales, or rhonchi." (Tr. 23.) Those reasons do not provide substantial evidence for discounting plaintiff's subjective complaints regarding her fibromyalgia.

### 2.    Plaintiff's Use of Assistive Devices for Mobility

"[T]he use of an assistive device is probative of a claimant's functional limitations only where it is medically required." *Luis G. v. Saul*, No. ED CV 19-00317-DFM, 2020 WL 1433589, at *3 (C.D. Cal. Mar. 24, 2020); *see also Dean N. v. Saul*, No. CV 18-09840-DFM, 2020 WL 430962, at *1 (C.D. Cal. Jan. 28, 2020) ("The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required.") (citing Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *7 (July 2, 1996)). "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

Here, plaintiff testified that she needs a cane, wheelchair, or motorized scooter to ambulate. (Tr. 65, 261.) To undermine that testimony, the ALJ stated that there is "no evidence in the record of a diagnosed need for such devices." (Tr. 29.) The Commissioner contends that the lack of a prescription for an assistive device is dispositive. (Def. Br. at 4.) The court disagrees that the lack of a prescription is dispositive regarding medical necessity. *Wright v. Colvin*, No. CV 313-079, 2014 WL 5591058, at *4 (S.D. Ga. Nov. 3, 2014) (citing *Staples v. Astrue*, 329 F. App'x 189, 191 (10th Cir. 2009) (holding that medical documentation establishing the need for a device does not require a prescription); *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002) (holding that a prescription for a cane without more was insufficient for a finding that the cane was medically necessary)). Moreover, SSR 96-9p refers only to the necessity of "medical documentation" to establish the need for a hand-held assistive device and does not say a prescription is required. *Blanket v. Berryhill*, No. 2:16-CV-00001-LRS, 2017 WL 2234184, at *4 (E.D. Wash. May 22, 2017). Here, Drs. Lowengart and Fondell's opinions provide adequate documentation.

Drs. Lowengart and Fondell both opined that plaintiff needed either a cane or wheelchair to ambulate and "describe[ed] the circumstances for which [they are] needed." SSR 96-9p, 1996 WL 374185, at *7. Dr. Lowengart opined that plaintiff would need a cane or other assistive device to occasionally stand or walk. (Tr. 523.) In 2023, Dr. Lowengart stated that for long distances plaintiff must use a wheelchair. (Tr. 1030.) Dr. Fondell also opined that plaintiff would need a cane or other assistive device for even occasional standing or walking due to her chronic fatigue syndrome. (Tr. 1060.) Plaintiff argues that her symptoms, namely her "sharp and continuous joint pain" or burning pain from fibromyalgia, preclude the performance of a single

eight-hour day of work. (Pl. Br. at 5.) Plaintiff further argues that her "normal gait" does not

demonstrate that she had the ability to stand more than two hours in an eight-hour workday, and

that her ability to stand for extended periods of time was limited by dizziness, joint pain and

fatigue, not any musculoskeletal impairment. (Pl. Br. at 9.) Plaintiff contends that for those

reasons, Dr. Lowengart laid out the circumstances when and why she would need to use a

wheelchair to ambulate. (Pl. Br. at 9, *see* Tr. 1030.) The ALJ failed to discuss that evidence, and

instead utilized many "normal gait" findings in the record to refute plaintiff's testimony. (Tr. 25-

29.) The ALJ did not meaningfully evaluate that her need for assistive devices are not related to a

musculoskeletal impairment, but due to POTS, Ehlers-Danlos Syndrome, and fibromyalgia. (*See*

Tr. 742 "her tilt-table study which meet diagnostic criteria for a [POTS] based upon an increase

of heart rate greater than 30 beats per minute virtually immediately upon being tilted to 70

degrees"). Accordingly, the court concludes that in this case, the ALJ has not provided rationales

that are backed by substantial evidence for discounting plaintiff's subjective complaints

regarding her need for assistive devices.

### 3.    Plaintiff's Activities of Daily Living

An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to

perform normal ADLs where: (1) the ADLs contravene the claimant's allegations of functional

limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn v. Astrue*,

495 F.3d 625, 639 (9th Cir. 2007); *Smartt*, 53 F.4th at 499-500; 20 C.F.R. § 416.929(c)(3)(i).

"Even where those activities suggest some difficulty functioning, they may be grounds for

discrediting the claimant's testimony to the extent that they contradict claims of a totally

disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520(a).

In the decision, the ALJ pointed to reports from plaintiff that she can "complete household tasks such as obtaining necessary nutrition with premade meals" and "keeping her own living space maintained and [doing] her own laundry." (Tr. 28.) The ALJ also indicated that plaintiff can "shop[] in brick and mortar stores." (Tr. 28-29.)

The ALJ improperly relied on plaintiff's ability to perform household chores and personal care. Although plaintiff's function report does include household chores, shopping, and ordering food in, plaintiff attested to needing assistance to complete most household tasks. Moreover, plaintiff described that she was limited in performing those tasks, and the record reflects that she consistently described these limitations to providers. *See Revels v. Berryhill*, 874 F.3d 648, 667-68 (9th Cir. 2017) (the ALJ erred in relying on the claimant's relatively numerous daily activities, where that claimant consistently described severe limitations in all of her ADLs).

The ALJ's reading of the record as to plaintiff's ability to shop in brick-and-mortar stores is not supported by substantial evidence. Most recently, plaintiff testified that "[a]ny meals [she] make[s] have to be[] like a bar that you can just grab and eat." (Tr. 53.) She stated that she microwaves her meals, does not cook anymore, and only gets up to go to the bathroom or grab something that is easy to eat. (Tr. 53.) She indicated that before "[she] got sick, I could stand around and [cook] on the stove and [she] wouldn't have a problem. But now, [she] can't stand for even more than five minutes." (Tr. 54.) Further, she testified that she does not go into brick and mortar stores any longer and orders her groceries online now due to her impairments. (Tr. 49,

286.) Thus, the record does not support the ALJ's conclusion that plaintiff's activities undermine her testimony and the ALJ erred in rejecting her testimony on that basis.

Overall, the ALJ's analysis of plaintiff's subjective symptom testimony is mischaracterized and unsupported by the record. Therefore, the ALJ failed to provide specific, clear and convincing reasons, supported by substantial evidence, for affording less weight to plaintiff's symptom testimony.[3]

## B.    *Medical Opinion Evidence*

Plaintiff challenges the ALJ's consideration of the medical opinions of Ruth Lowengart, M.D., and Nat Fondell, M.D. The regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness. 20 C.F.R. § 416.920c. ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (quoting 20 C.F.R. § 416.920c(b)(2)). Supportability is determined by assessing whether the medical source provides explanations and objective medical evidence to support their opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by evaluating how consistent the opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 416.920c(c)(2).

### 1.    Ruth Lowengart, M.D.

---

[3]    The Commissioner suggests that the ALJ provided another reason that discredits plaintiff's subjective symptom testimony, that being conservative treatment. (*See* Def. Br. at 4-5.) However, the ALJ did not provide a meaningful discussion of how any conservative treatment undermines plaintiff's allegations. The ALJ merely points out that plaintiff was treated conservatively for gastroparesis and migraines but does not describe how it cuts against her testimony regarding her diagnoses of POTS, fibromyalgia, or Ehlers-Danlos Syndrome. (*See* Tr. 18.)

Page 11 – OPINION AND ORDER
*Jasmine G. v. Comm'r Soc. Sec. Admin.*, 1:24-cv-01183-AR

On April 18, 2022, and August 17, 2023, Dr. Lowengart submitted treating source statements to support plaintiff's disability claim. (Tr. 521-24, 1028-31.) The ALJ found Dr. Lowengart's opinions unpersuasive because they "were not supported by [her] examination findings. Nor were they consistent with the overall record. The record shows that [plaintiff]'s physical functioning was much more intact than described." (Tr. 27.) The ALJ cited physical examinations demonstrating plaintiff's 5/5 strength bilaterally and her full range of motion. (Tr. 27, citing Tr. 423, 425, 491, 493, 720-21, 723-24, 778-79, 1023, 1032-44, 1046.) As for plaintiff's use of assistive devices to ambulate, the ALJ found that there was no evidence in the record of a diagnosed medical need for such devices. (Tr. 27, *see also* Tr. 523.) Lastly, the ALJ relied on plaintiff's activities of daily living (ADLs) to find Dr. Lowengart's opinions unpersuasive. The ALJ's conclusions are not supported by substantial evidence.

Dr. Lowengart's April 2022 opinion indicated that plaintiff would need a six-hour rest before returning to work and that her chronic pain syndrome and fibromyalgia meant she had to lie down most of the day. (Tr. 521-23.) Dr. Lowengart has been treating plaintiff since 2021 and saw her five times since September 1, 2021. (Tr. 521.) Dr. Lowengart diagnosed plaintiff with chronic fatigue syndrome, chronic pain syndrome, diarrhea, fibromyalgia, and depression. (Tr. 521.) Dr. Lowengart further explained that plaintiff's symptoms began after a flu-like illness in August of 2020 from which she never recovered and causes short-term memory and concentration problems, sore throat, tender lymph nodes, muscle pain, joint pain, unrefreshing sleep, and post exertional malaise lasting more than 24 hours. (Tr. 522.) Dr. Lowengart opined that plaintiff can walk zero blocks, sit and stand for five minutes at a time and less than two hours each in an eight-hour workday, can rarely lift 10 pounds, can use her hands for 20 percent

of the workday, is likely to be off-task 25 percent or more during a typical workday, is incapable of even "low stress" jobs, and will miss more than four days of work per month. (Tr. 522-24.) In addition, she is intolerant to heat, cold, noise, and has blurry vision. (Tr. 524.)

On August 17, 2023, Dr. Lowengart completed a Fibromyalgia Medical Source Statement, in which she listed plaintiff's diagnoses as: Ehlers-Danlos syndrome, chronic fatigue syndrome, POTS, cubital tunnel syndrome, headache, obesity, and fibromyalgia. (Tr. 1028, 1054-58.) Compared to the April 2022 opinion, Dr. Lowengart increased plaintiff's ability to sit from five minutes to 20 minutes, and increased plaintiff's ability to use her hands for handling and reaching from 10 to 20 percent. (Tr. 1029, 1031.) Otherwise, Dr. Lowengart's opined limitations remained the same. (*See* Tr. 1030-31.)

The ALJ's consideration of Dr. Lowengart's medical opinion is problematic. First, although the ALJ pointed to specific examination findings that were inconsistent with the manipulative limitations, the ALJ's analysis does not explain why he rejected Dr. Lowengart's opinion that plaintiff can only sit for less than two hours, stand for less than two hours, needs to use a wheelchair for longer distances, and can engage in postural activities only occasionally. (Tr. 27.) The ALJ found that Dr. Lowengart's opinion was inconsistent with the examination findings, which documented only "5/5 strength bilaterally" and "full range of motion." But the ALJ failed to consider plaintiff's pain and numbness in her arms and hands as well as her ability to stand for extended periods of time was limited by dizziness, joint pain and fatigue. (Tr. 27; *see* Tr. 515, 1060.) Further, the ALJ did not consider the unique nature of fibromyalgia and did not discuss SSR 12-2p. *See* SSR 12-2p, 2012 WL 3104869, *2 (effective July 25, 2012). Fibromyalgia is a disease that eludes objective measurement. *Benecke*, 379 F.3d at 594. "[A] person with

fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 663. Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia." *Id.* at 666.

Here, the ALJ rejected Dr. Lowengart's opinion as inconsistent with the medical evidence, including normal sensation and reflexes, with no actual analysis of plaintiff's fibromyalgia. (Tr. 27.) Plaintiff's intact cranial nerve, intact sensation, intact reflexes, 5/5 strength, full range of motion, and normal gait did not undermine Dr. Lowengart's opinion of plaintiff's limitations. Thus, the ALJ's explanation does not demonstrate a meaningful review of the supportability and consistency factors of Dr. Lowengart's opinion. *See Brown-Hunter*, 806 F.3d at 492 (stating ALJ must set forth the reasoning behind its decisions in a way that allows for meaningful review, and logically link the evidence to his or her conclusions).

Second, the ALJ found Dr. Lowengart's opinions unpersuasive because they were inconsistent with plaintiff's ADLs. (Tr. 27.) A medical opinion can be undermined by a claimant's reported activities if supported by substantial evidence. *Ford*, 950 F.3d at 1155. Yet, disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)). Here, the ALJ found plaintiff's ability to complete household tasks such as "obtaining necessary nutrition with premade meals[,]" keeping her own living space maintained, doing laundry, and shopping in brick-and-mortar stores evidences her limitations are not as debilitating as opined. (Tr. 27.) The ALJ failed to explain how plaintiff's activities were inconsistent with Dr. Lowengart's opinions. For example, it is unclear how

plaintiff's ability to do laundry or shop in brick-and-mortar stores is inconsistent with Dr. Lowengart's opinion that plaintiff needs to rest for four hours due to joint and muscle pain, dizziness, and fatigue. (*See* Tr. 1029.) Nor is it clear how plaintiff's ability to obtain necessary nutrition with premade meals (like ordering food in) is inconsistent with Dr. Lowengart's opinions. (*See* Tr. 51.) The court concludes that the ALJ has not adequately shown plaintiff's ADLs are inconsistent with Dr. Lowengart's opinions.

In sum, the ALJ's rationale for finding Dr. Lowengart's opinions unpersuasive is not supported by substantial evidence and the ALJ has erred. *See Ghanim*, 763 F.3d at 1160-61; *Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.").

### 2.    Nat Fondell, M.D.

In August 2023, Nat Fondell, M.D., submitted a treating source statement in support of plaintiff's disability claim. (Tr. 1058-61.) Dr. Fondell assessed plaintiff as having Ehlers-Danlos Syndrome, POTS, and fibromyalgia. (Tr. 1058.) Dr. Fondell opined that plaintiff could sit for 20 minutes at one time and stand for five minutes at one time. (Tr. 1059.) He opined that plaintiff could perform sitting, standing, or walking for less than two hours, and that she would need to take four breaks a day to lie down. (Tr. 1059.) He opined that she could not use her hands and arms for more than 10 percent of the workday. (Tr. 1060.) Dr. Fondell also opined that plaintiff was incapable of "low stress" work, would be off task for 25 percent of the workday, and would miss more than four days of work per month. (Tr. 1061.)

Plaintiff contends that the ALJ "reduced his review of the treatment records" and, in turn, did not consider the full extent of what the treatment notes stated. (Pl. Br. at 11.) For example, plaintiff highlights that on February 7, 2023, Dr. Fondell examined plaintiff and found normal speech, no discernible extremity weakness, clear lungs, no rashes, normal heart rate and rhythm, and no tremors. (Tr. 793.) However, Dr. Fondell also assessed fibromyalgia, cluster headache, neuropathy, depressive disorder, GERD, and lightheadedness. (Tr. 794.) Plaintiff contends that the ALJ's explanation does not consider her underlying impairments. (Pl. Br. at 11.) The court agrees.

Here, the ALJ cited treatment notes showing plaintiff's 5/5 bilateral strength, full range of motion, and intact cranial nerve function. (Tr. 28, citing Tr. 423, 425, 491, 493, 720-21, 723-24, 778-79, 1023, 1032-44, 1046.) The ALJ found that Dr. Fondell's treatment notes indicate plaintiff's physical functioning is much more intact than described yet failed to consider the "full chronological record" to determine plaintiff's functionality. *See Ghanim*, 763 F.3d at 1164. On August 17, 2023, plaintiff demonstrated on physical examination that she was "well developed" with "5/5" strength in her upper and lower extremities. (Tr. 1046.) However, those same treatment notes state her "[j]oints are hypermobile. [She has p]oor muscle development. . . [her s]ensation [is] slightly reduced [in her] feet and hands. [Her r]eflexes [are] hyperactive at knees . . . [Her h]ands appear like they are not used much. [Her] MCP joints may be slightly swollen. [She h]as 18/18 tender points consistent with fibromyalgia." (Tr. 1046.) Dr. Fondell also noted that as to her Hypermobile Ehlers-Danlos Syndrome, "she is one of the more severe cases that I have seen[.]" (Tr. 1046.) Regarding plaintiff's unknown viral illness, Dr. Fondell explained that her chronic fatigue syndrome "most likely started from an unknown viral illness in August

2020 and she developed decompensation of the oxidation pathways causing damage to the mitochondria . . . I think it best explains why multiple inciting events can lead to the same end point of Chronic Fatigue/Fibromyalgia and other conditions." (Tr. 1046.) In addition to Dr. Fondell, many of plaintiff's treatment providers have observed her physical health decline and echo Dr. Fondell's opinion that plaintiff would be off task more than 25 percent of the workday and miss more than four days per month. (*See* Tr. 551, 639-40, 708-09, 714, 740, 742, 779, 957-58, 1023.)

The ALJ found Dr. Fondell's opinion unpersuasive because "it is inconsistent and unsupported by the record," relying on the same rationales used to find Dr. Lowengart's opinion and plaintiff's subjective symptom testimony unpersuasive. (Tr. 27-29.) As with Dr. Lowengart's opinion, the ALJ's explanation does not demonstrate a meaningful review of the supportability and consistency factors of Dr. Fondell's opinion. As stated, the ALJ must build an accurate and logical bridge from the evidence to his or her conclusions. *Brown-Hunter*, 806 F.3d at 492. Here, the ALJ has failed to do so and his determination that Dr. Fondell's opinion is unsupported by treatment notes and is inconsistent with plaintiff's ADLs is not backed by substantial evidence. The ALJ has erred.

In summary, the ALJ's rationales provided to discount the medical opinions and plaintiff's symptom testimony are not based on substantial evidence or supported by reasonable references drawn from the record.

C.      *Remand*

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under that analysis, the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Plaintiff satisfies all three parts of the credit-as-true analysis. (Pl. Br. at 5, 12-13.) As explained above, the ALJ failed to provide legally sufficient reasons to reject plaintiff's testimony and the medical opinions of Drs. Lowengart and Fondell. Both Drs. Lowengart and Fondell opined that plaintiff would be absent from work four days per month due to her impairments and be off-task more than 25 percent of the workday. (Tr. 523-24, 1057, 1061.) Both physicians also opined that plaintiff would have difficulty using her upper extremities and could only manipulate with either her arms or hands for 10 percent of a typical workday. (Tr. 1057, 1060.) The vocational expert testified that if plaintiff was absent more than two days per month,

that alone would eliminate competitive employment. (Tr. 72.) The vocational expert also testified that if plaintiff could only handle bilaterally on a "less than occasional" basis, that too would preclude employment. (Tr. 73-74.) If that testimony is credited as true, the ALJ would be required to find plaintiff disabled on remand. Plaintiff testified that in the relevant time period, she experienced severe symptoms related to fibromyalgia, Ehlers-Danlos Syndrome, autism, depression, agoraphobia, chronic fatigue and pain syndrome, cubital tunnel syndrome, and POTS, which includes joints popping in and out of place throughout her body, extreme fatigue and exhaustion, an abnormally increased heart rate when shifting positions, a lack of concentration due to pain, and extreme anxiety in social situations. (Tr. 54-59, 291-94.) Those limitations were echoed by her mother and sibling. (*See* Tr. 251-58, 329-30.)

The Commissioner contends that the ALJ's decision was legally sufficient and that the court should not remand for the immediate calculation and payment of benefits. (Def. Br. at 9-10.) However, the Commissioner does not "point to anything in the record that the ALJ overlooked and explain how that evidence casts into serious doubt [plaintiff's] claim to be disabled[.]" *Burrell*, 775 F.3d at 1141 (citing *Garrison*, 759 F.3d at 1022). Indeed, the Commissioner identifies no conflicting evidence or unresolved factual issues regarding the improperly discredited evidence. (*See* Def. Br. at 9-10.) Therefore, remanding for further administrative proceedings would serve no useful purpose.

Finally, reviewing the whole record creates no doubt that plaintiff is, in fact, disabled. *Garrison*, 759 F.3d at 1022-23. The record reflects that plaintiff has disabling physical and mental limitations due to fibromyalgia, Ehlers-Danlos Syndrome, POTS, autism, chronic fatigue and pain syndrome, cubital tunnel syndrome, agoraphobia, and depression. In sum, the court

concludes that plaintiff satisfies the credit-as-true test, has no serious doubt that plaintiff is disabled, and that remanding this case for an immediate calculation of benefits is appropriate.

### CONCLUSION

For the above reasons, the court REVERSES the Commissioner's decision and REMANDS for an immediate calculation of benefits.

ORDERED: June 10, 2025.

_____
JEFF ARMISTEAD
United States Magistrate Judge